RESOLUTION TRUST CORPORATION, in its Capacity as Receiver for United Federal Savings Bank, a Federal Association, Plaintiff,

v.

Ronald J. FLANAGAN and Beverly Flanagan, Defendants.

Civ. No. 4–92–152.

United States District Court, D. Minnesota, Fourth Division.

May 18, 1993.

Mary E. Senkus, Jeffry Anderson, and Oppenheimer Wolff & Donnelly, Minneapolis, MN, for plaintiff.

David L. Sasseville, and Lindquist and Vennum, Minneapolis, MN, for defendants.

## ORDER

DOTY, District Judge.

This matter is before the court on the plaintiff's motion for summary judgment. Based on a review of the file, record and proceedings herein, the court denies the plaintiff's motion.

## BACKGROUND

On May 30, 1988, United Federal Savings Bank ("United Federal") loaned defendant Ronald J. Flanagan $600,000. The loan is evidence by a promissory note ("note") dated May 30, 1988, in the amount of $600,000. The note had a term of one year with accrued interest to be paid monthly and the entire principal was due on May 30, 1989. As security for the loan, Flanagan and his wife, defendant Beverly Flanagan, gave United Federal a mortgage covering a certain parcel of land located in Anoka County, Minnesota ("the land"). In May 1989, Flanagan defaulted on his obligations under the note and mortgage. Flanagan and United Federal thereafter entered into discussions concerning the implementation of a plan by which Flanagan would be able to satisfy his debt.

On May 10, 1990, the Office of Thrift Supervision appointed the Resolution Trust Corporation ("RTC") receiver of United Federal. As receiver, the RTC is the current and lawful holder of the note and mortgage. The RTC commenced this action on February 14, 1992, to foreclose the mortgage and obtain judgment against Flanagan under the note. The RTC alleges that as of February 12, 1992, Flanagan owed the RTC principal in the amount of $574,538.01 and interest on that principal in the amount of $122,807.91. The RTC further alleges that interest continues to accrue on the unpaid principal. The RTC now contends that summary judgment on its claim against Flanagan is appropriate and seeks an order adjudging the amounts currently owed pursuant to the terms of the loan documents and authorizing a foreclosure sale of the land pursuant to Minn.Stat. § 581.01 et seq.

Flanagan does not dispute that he defaulted on his obligations or that he owes the principal and some interest. Flanagan, however, contends that based on oral representations made by RTC representatives during a conversation in July 1990 no interest has accrued since June 1990. Specifically, Flanagan alleges that he had been attempting to sell the land and use the proceeds to satisfy a portion of his debt, that the RTC told him to terminate his efforts and it would attempt to sell the land and that if he followed its instructions it would charge no interest after June 1990. Flanagan contends that he relied on the RTC's representations and that the doctrine of promissory estoppel now bars the RTC from charging and collecting interest on the note after June 1990. Flanagan further contends that the court should deny the RTC's motion because there exist material disputes concerning the factual predicate of his estoppel defense.

The RTC does not dispute that it made the alleged representations. The RTC, however, contends that its representations are not enforceable, that promissory estoppel is not applicable in this case and that the parties' written agreements, as set forth in the note and mortgage, govern this action. The RTC thus maintains that Flanagan is responsible for the interest that has accrued since July 1990.

## DISCUSSION

■ Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which requires that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Stated in the negative, summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322–23, 2552. With this standard at hand, the court will consider the RTC's motion for summary judgment.

■ The RTC argues that even if it made an oral agreement to stop charging interest after June 1990, that agreement is not enforceable under Minnesota law. Minn.Stat. § 513.33 provides that:

> A debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor.

Minn.Stat. § 513.33 subd. 2. A "credit agreement" is defined as "an agreement to lend or forbear repayment of money ..., to otherwise extend credit, or to make any other financial accommodation." Minn.Stat. § 513.33 subd. 1(1). There is no dispute that the alleged oral representation was a credit agreement within the meaning of Minn.Stat. § 513.33. *Cf. Carlson v. Estes,* 458 N.W.2d 123, 128 (Minn.Ct.App.1990) (bank's alleged oral agreement to lower interest rate was a "credit agreement" within the meaning of Minn.Stat. § 513.33). The RTC thus argues that under the specific terms of Minn.Stat. § 513.33 subd. 2, Flanagan may not use the oral agreement in his defense.

Flanagan contends that even though the oral agreement is not enforceable under the statute of frauds requirement of Minn.Stat. § 513.33, he relied to his detriment on the RTC's oral representation and therefore, the RTC is estopped from relying on Minn.Stat. § 513.33. *See Norwest Bank Minnesota v. Midwestern Machinery Co.,* 481 N.W.2d 875, 880 (Minn.Ct.App.1992) ("An agreement may be taken outside the statute of frauds by equitable or promissory estoppel.") (citing *Berg v. Carlstrom,* 347 N.W.2d 809, 812 (Minn.1984). "Promissory estoppel will be found where a party makes a promise knowing another party reasonably relies and acts upon that promise, and the promise must be enforced to avoid injustice." *Id.* (citation omitted); *see also Resolution Trust Corp. v. Circle Pines Inv. Co.,* Civ. No. 4–92–147 at p.

12 (D.Minn. Sept. 16, 1992) (under the doctrine of promissory estoppel, a party seeking to take an agreement out of the "statute of frauds must demonstrate that application of the statute of frauds would protect, rather than prevent, the perpetration of a fraud") (citations omitted). "The reasonableness of a party's reliance is a fact question for the jury and not generally amenable to summary judgment." *Norwest Bank,* 481 N.W.2d at 880 (citing *Brenner v. Nordby,* 306 N.W.2d 126, 127 (Minn.1981).

■ There is no dispute that Flanagan relied on the RTC's representation that it would attempt to sell the land and that it would charge no interest after June 1990. Based on that representation, Flanagan terminated his efforts to sell the land.[1] Had Flanagan continued his efforts to sell the land, he might have been able to satisfy a substantial portion of the debt owed the RTC.[2] A question remains, however, whether Flanagan's reliance was reasonable. The court thus finds that a fact dispute exists regarding the application of promissory estoppel in this case and concludes that summary judgment is not appropriate.

Based on the foregoing, **IT IS HEREBY ORDERED** that the RTC's motion for summary judgment is denied.

---

1. Flanagan had listed the land for sale with a realtor. Flanagan originally listed the land for $530,000 in November 1989, and later reduced it to $490,000.

2. Prior to the RTC becoming receiver for United Federal, Flanagan had also discussed with United Federal the possibility of satisfying any deficiency resulting from the proceeds of the sale of the land with the proceeds from a claim he had against United Federal's parent corporation, Rosewood Corporation, for approximately $140,000.