# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 02-1515

———————

James Casazza,                                    *
                                                  *
              Appellant,                          *
                                                  *   Appeal from the United States
       v.                                         *   District Court for the
                                                  *   District of Minnesota.
Joseph C. Kiser,                                  *
                                                  *
              Appellee.                           *

———————

Submitted:  October 7, 2002

Filed:  December 10, 2002

———————

Before BOWMAN, RICHARD S. ARNOLD, and LOKEN, Circuit Judges.

———————

BOWMAN, Circuit Judge.

       This appeal arises from James Casazza's ill-fated effort to purchase a fifty-two-foot sailboat named the *"Andante"* from Joseph C. Kiser.  Casazza sued Kiser seeking damages under the legal theories of breach of contract and promissory estoppel for Kiser's failure to sell him this boat.  The District Court[1] granted Kiser's motion to dismiss.  We affirm.

_____

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

## I. Background

In late May 2001, Casazza read Kiser's listing of the *Andante* on an internet sales site. Shortly thereafter, Casazza contacted Kiser and expressed an interest in purchasing the boat. They agreed to meet during the weekend of June 2, 2001, in Ft. Lauderdale, Florida, where the *Andante* was located. Casazza first viewed the boat on June 2 and looked at it again with Kiser the following day. Casazza and Kiser met again on June 4, 2001, and, according to Casazza, negotiated an agreement for Casazza's purchase of the *Andante*. The details of this agreement were handwritten by each party on separate sheets of paper and at some point converted, presumably by Casazza, into a typewritten agreement (collectively, the "purchase terms"). That agreement provided for a sales price of $200,000 for the boat. The agreement further stated the sale was contingent on a marine survey, including a sea trial, satisfactory to Casazza. Among other provisions, the agreement also required payment by wire transfer and replacement of the mast step, and it detailed the logistics of transferring the boat from Florida to Virginia. Kiser never signed the agreement and the marine survey and sea trial did not take place.

During their meeting on June 4, Kiser gave Casazza a blank Coast Guard bill of sale to complete. The next day, Kiser and Casazza executed a software license transfer agreement for the boat's navigational software. This license agreement is the only document in the dispute signed by both parties and it does not refer to the *Andante*. Following these events, Casazza arranged for a marine survey, obtained an estimate for repair of the mast step, visited marinas, and tentatively reserved slip space for the *Andante* at a marina in Virginia. Things apparently went awry a week later, however, when Kiser informed Casazza that he would not sell him the boat. In response, Casazza initiated this suit and sought a temporary restraining order (TRO) to prevent Kiser from selling the *Andante* to someone else. While the application for the TRO was pending, but before Kiser had notice of it, Kiser sold the boat. Casazza

-2-

amended his complaint and Kiser moved to dismiss the case on the basis of the statute of frauds. Casazza responded to Kiser's motion to dismiss and filed a Federal Rule of Civil Procedure 56(f) motion and affidavit requesting that the District Court's consideration of the motion to dismiss be delayed pending additional discovery.

On January 15, 2002, the District Court dismissed the action, concluding that additional discovery would not assist the court in the resolution of whether the statute of frauds applies to the dispute and that the defense barred Casazza's breach of contract and promissory estoppel claims. The District Court denied Casazza's motion for reconsideration. On appeal, Casazza argues the District Court erred in dismissing his claims.

## II. Discussion

We must first decide whether the District Court properly treated Kiser's motion as one to dismiss for failure to state a claim, Fed. R. Civ. P. 12(b)(6), instead of one for summary judgment, Fed. R. Civ. P. 56. Although not specifically briefed by the parties, the issue was discussed during oral argument on appeal. When "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(c). In this case, Kiser submitted a two-page affidavit in support of his motion to dismiss Casazza's amended complaint. The affidavit addressed issues related to Kiser's jurisdictional challenge to Casazza's suit: specifically, whether Casazza can prove that the damages he allegedly suffered meet the jurisdictional minimum for diversity cases.[2] Affidavit of Joseph C. Kiser in Support of Motion to Dismiss at 1-2; Transcript of Proceedings, January 14, 2002, at 11. In its ruling, the

---

[2]The District Court rejected Kiser's argument that it lacked jurisdiction over Casazza's claims noting that Casazza was able to meet his preliminary burden of showing that the amount in controversy met the $75,000 jurisdictional minimum of 28 U.S.C. § 1332. Memorandum and Order, January 15, 2002, at 3.

District Court granted Kiser's motion to dismiss for failure to state a claim without converting the motion into a summary judgment motion. Memorandum and Order, January 15, 2002, at 5-6.

We have previously said that "Rule 12(b)(6) motions are not automatically converted into motions for summary judgment simply because one party submits additional matters in support of or [in] opposition to the motion." Missouri ex rel. Nixon v. Coeur D'Alene Tribe, 164 F.3d 1102, 1107 (8th Cir.) (citation omitted), cert. denied, 527 U.S. 1039 (1999).  For example, a district court does not convert a motion to dismiss into a motion for summary judgment when it does not rely upon an affidavit in dismissing a claim, Martin v. Sargent, 780 F.2d 1334, 1336-37 (8th Cir. 1985), or when the district court makes clear that it ruled only on the motion to dismiss,  Skyberg v. United Food & Commercial Workers Int'l Union, 5 F.3d 297, 302 n.2 (8th Cir. 1993).  Here, the District Court ruled on the motion as a motion to dismiss and there is no evidence that it relied on Kiser's affidavit or any other matters outside the pleadings in granting the motion.[3]

We review de novo a district court's order granting a motion to dismiss, viewing the allegations in the complaint in the light most favorable to the plaintiff. Weaver v. Clarke, 45 F.3d 1253, 1255 (8th Cir. 1995) (stating standard of appellate review for a 12(b)(6) motion).  Like the District Court, we must accept the allegations of the complaint as true and dismiss the case only when "it appears beyond doubt that

---

[3]As noted above, Kiser's affidavit supported his jurisdictional attack on Casazza's suit.  In a situation such as this, a district court may consider matters outside the pleadings and not convert the motion to dismiss into a motion for summary judgment.  See Deuser v. Vecera, 139 F.3d 1190, 1191 n.3 (8th Cir. 1998) ("The district court has the authority to consider matters outside the pleadings on a motion challenging subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." (citation to quoted case omitted)).

the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## A. The Statute of Frauds Defense

Casazza contends the District Court erred when it dismissed his breach of contract claim, holding it was barred by the statute of frauds. Subject to certain limited exceptions, the statute of frauds renders unenforceable any unwritten contract for the sale of goods with a value over $500. See Minn. Stat. § 336.2-201 (2000).[4] Because Kiser raised the statute of frauds defense in his motion to dismiss, Casazza was required to affirmatively show the existence of an appropriate writing or an exception to this defense in order to avoid dismissal by the District Court. In this appeal, Casazza argues that the alleged contract was taken out of the statute of frauds by (1) the doctrine of part performance, (2) the existence of a sufficient writing, and (3) the possibility that Kiser may have a sufficient writing or that Kiser might admit a contract was formed between the parties had the District Court granted Casazza's request for additional time for discovery. All these arguments are without merit.

## (1) Part Performance

Under the part-performance exception to the statute of frauds, a writing is not required "with respect to goods for which payment has been made and accepted or which have been received and accepted." Id. § 336.2-201(3)(c). Here, Casazza contends that his acceptance of the navigational software constitutes part performance of the parties' alleged agreement concerning the sale of the *Andante*. In support of this claim, Casazza relies on section 336.2-606(2) (2000), which provides that "[a]cceptance of a part of any commercial unit is acceptance of that entire unit."

---

[4]We assume for purposes of this appeal, as do the parties, that Minnesota law applies to this dispute.

According to Casazza, the navigational software is part of the *Andante*. Thus, Casazza argues, when he accepted this software, he accepted the *Andante*.

First, we question the applicability of section 336.2-606(2) to the present dispute. The drafters of the commercial code designed this provision to limit a buyer's right of revocation of acceptance to whole units. See Minn. Stat. Ann. § 336.2-606(2) (West 2002) Prof. Robert C. McClure, Minnesota Code Comment (1966) (noting that "a buyer, when making a partial rejection, cannot unnecessarily destroy the value of a commercial unit"). As the Ninth Circuit observed of the uniform provision at issue here, "The commercial unit provision is included to protect *a seller* from having a buyer return *less* than a commercial unit. Return of less than a commercial unit would leave the seller with only components of a commercial unit, which would have severely reduced market value." S&R Metals, Inc. v. C. Itoh & Co. (America), 859 F.2d 814, 817 (9th Cir. 1988) (first emphasis added) (citing Abbett v. Thompson, 263 N.E.2d 733, 735-36 (Ind. Ct. App. 1970) (holding buyer could not keep some parts of a car wash machine and revoke acceptance of the rest because the entire machine was a commercial unit and would have little value to the seller if incomplete)).

Second, even assuming section 336.2-606(2) applies to the instant dispute, we conclude that under no circumstances could the software and the *Andante* be considered a single "commercial unit." Minnesota's Uniform Commercial Code states that:

> "Commercial unit" means such a unit of goods as by commercial usage is a single whole for purposes of sale and division of which materially impairs its character or value on the market or in use. A commercial unit may be a single article (as a machine) or a set of articles (as a suite of furniture or an assortment of sizes) or a quantity (as a bale, gross, or carload) or any other unit treated in use or in the relevant market as a single whole.

Minn. Stat. § 336.2-105(6) (2000). Viewing Casazza's allegations in the light most favorable to him, we are hard-pressed to see how the navigational software and the *Andante* are a "single whole." Notably, Casazza concedes that the navigational software was purchased years after the *Andante* was built and that Kiser sold the boat to another party without it. Though Casazza distinguishes some cases cited in Kiser's brief, Casazza fails to cite a single case in support of his position that this Court should treat the *Andante* and the navigational software as a commercial unit, and our own research has not revealed any authority supporting this position. In short, we agree with the District Court that the doctrine of part performance cannot transmute Kiser's gift of the navigational software into a contract for the sale of the *Andante*.

### (2) Sufficient Writing

Casazza also argues that the statute of frauds is inapplicable to this dispute because there is a sufficient writing showing the existence of a contract between the parties. The primary purpose of the writing requirement in the statute of frauds is to demonstrate that a contract for sale has indeed been made. See 1, James J. White & Robert S. Summers, Uniform Commercial Code § 2-4, at 63 (4th ed. 1995). But the statute does not require one writing containing all the terms. See Simplex Supplies, Inc. v. Abhe & Svoboda, Inc., 586 N.W.2d 797, 801 (Minn. Ct. App. 1998). Rather, "[s]everal papers may be taken together to make up the memorandum, providing they refer to one another, or are so connected together, by reference or by internal evidence, that parol testimony is not necessary to establish their connection with the contract." Id. (quoting Olson v. Sharpless, 55 N.W. 125, 126 (1893)). In addition, "[t]he signature can be found on any document and may consist of 'any symbol executed or adopted by a party with present intention to authenticate a writing.'" Id. (quoting Minn. Stat. § 336.1-201(39) (1996)). Casazza argues that the purchase terms, in particular the notes allegedly made by Kiser, and the executed software license transfer agreement constitute a sufficient writing. We disagree.

Casazza admits that he does not have a copy of a document that satisfies the statute of frauds. Casazza attempts to overcome this obstacle by arguing his pleadings reference the existence of a handwritten document allegedly prepared by Kiser, which—along with the executed software transfer agreement—constitute a sufficient writing. The typewritten agreement attached to Casazza's amended complaint is not signed by Kiser and there is no allegation that Kiser participated in its preparation. While Kiser did sign the software license transfer agreement, that document does not refer to any contemplated, proposed, or agreed contract for the sale of the *Andante*. We refuse to allow Casazza to proceed with his breach of contract claim on this basis because to do so would eviscerate the statute of frauds. Casazza has failed to produce any document, or combination of documents, that satisfy the statute of frauds' writing requirement. Casazza's statements that a writing sufficient to satisfy the statute of frauds *may* exist is not enough to defeat Kiser's motion to dismiss.

## (3) Admissions Exception

In a related argument, Casazza argues that the admissions exception to the statute of frauds applies to this dispute. See Minn. Stat. § 336.2-201(3)(b) (2000). That subsection provides that even when there is no signed writing sufficient to satisfy the writing requirement, the proponent of the exception can escape the requirements of the statute of frauds "if the party against whom enforcement is sought admits in pleading, testimony or otherwise in court that a contract for sale was made." Id. Here, Kiser has made no such admission. Nonetheless, Casazza argues that had the District Court granted his request for additional time for discovery pursuant to Fed. R. Civ. P. 56(f), Kiser might have made such an admission. Specifically, Casazza claims that Kiser may have a sufficient writing or that Kiser might admit a contract was formed between the parties if he were deposed. The District Court denied the request and found that resolution of whether the statute of frauds applies to the dispute did not require further factual development.

-8-

In light of our decision affirming the District Court's decision to dismiss Casazza's breach of contract claim, we need not reach the discovery issues raised in Casazza's Rule 56(f) petition. See Silver v. H&R Block, Inc., 105 F.3d 394, 397 (8th Cir. 1997) ("We need not reach the [Rule 56(f)] discovery issue because the district court could have granted [defendant's] motion to dismiss rather than convert the motion to one for summary judgment."). Moreover, even if we were to reach this issue, we would find the District Court did not abuse its discretion in denying Casazza's Rule 56(f) request. See Nat'l Bank of Commerce v. Dow Chem. Co., 165 F.3d 602, 606 (8th Cir. 1999) ("The district court has discretion to determine when there has been adequate time for discovery and we review that determination for abuse of discretion."). Casazza filed this case on June 15, 2001. In accordance with the pretrial schedule, the District Court set November 30, 2001 as the deadline for the parties' Rule 26(a)(1) pretrial disclosures. On November 8, 2001, Kiser filed his motion to dismiss. While Casazza's response to this motion was due before the parties' pretrial disclosures, Casazza did not request additional time to file his response. The District Court held a hearing on the motion to dismiss on January 14, 2002. By that time—six months after the suit was filed—Casazza still had not produced any writing sufficient to satisfy the statute of frauds nor had he obtained an admission from Kiser that a contract existed. Given the period of time that elapsed and the conclusory nature of Casazza's request for a continuance, we find the District Court did not abuse its discretion by denying further discovery and ruling on the motion to dismiss. See id. ("A conclusory statement that some useful evidence could possibly be found is insufficient to preclude the termination of discovery.").

## B. Promissory Estoppel

Casazza alternatively argues that even if the alleged contract fails to satisfy the statute of frauds, his case should be permitted to proceed because a statute of frauds defense is inapplicable to his promissory estoppel claim. The District Court rejected this argument, holding that Casazza's promissory estoppel claim rests on the same

purported promise that forms the basis of his breach of contract claim and that to allow Casazza to pursue the promissory estoppel claim, despite the lack of a sufficient writing, "would negate the purpose of the statute of frauds." Memorandum and Order, January 15, 2002, at 5 n.1.

Promissory estoppel implies "a contract in law where none exists in fact." Grouse v. Group Health Plan, Inc., 306 N.W.2d 114, 116 (Minn. 1981). "Under promissory estoppel, a promise which is expected to induce definite action by the promisee, and does induce the action, is binding if injustice can be avoided only by enforcing the promise." Cohen v. Cowles Media Co., 479 N.W.2d 387, 391 (Minn. 1992) (citations omitted); see also Grouse, 306 N.W.2d at 116.

In Del Hayes & Sons, Inc. v. Mitchell, 230 N.W.2d 588, 593-94 (Minn. 1975), the Minnesota Supreme Court identified three approaches courts have taken concerning the applicability of the statute of frauds defense to promissory estoppel claims. Under the first (or "Restatement") approach, "promissory estoppel will defeat the statute of frauds only when the promise relied upon is a promise to reduce the contract to writing." Id. The second approach described by the court, and adopted in numerous jurisdictions, rejects "the view that promissory estoppel can remove an oral contract from the statute of frauds." Id. at 594; see also Lige Dickson Co. v. Union Oil Co., 635 P.2d 103, 107 (Wash. 1981) (holding "promissory estoppel cannot be used to overcome the statute of frauds in a case which involves the sale of goods"). According to the court, jurisdictions that have adopted this approach "do so because a promissory estoppel exception would likely render the statute of frauds nugatory." Del Hayes, 230 N.W.2d at 594; see also McDabco, Inc. v. Chet Adams Co., 548 F. Supp. 456, 461 (D.S.C. 1982) ("The [South Carolina] legislature has provided that the only exceptions to the requirements of a written contract of sale are provided in Sections 36-2-201(2) and (3). Promissory estoppel is not included within these subsections."). The third and least restrictive approach described by the court states that an oral promise can satisfy the statute of frauds only "where the detrimental

-10-

reliance is of such a character and magnitude that refusal to enforce the contract would permit one party to perpetrate a fraud." Del Hayes, 230 N.W.2d at 594. The court went on to note that "[a] mere refusal to perform an oral agreement, unaccompanied by unconscionable conduct, however, is not such a fraud as will justify disregarding the statute." Id.; see also Resolution Trust Corp. v. Flanagan, 821 F. Supp. 572, 574 (D. Minn. 1993) ("under the doctrine of promissory estoppel, a party seeking to take an agreement out of the 'statute of frauds must demonstrate that application of the statute of frauds would protect, rather than prevent, the perpetration of a fraud'" (citations omitted)). The Del Hayes court did not endorse any particular view and held that, under any approach, promissory estoppel was not available so as to remove the oral contract at issue in that case from the statute of frauds. Del Hayes, 230 N.W.2d at 594.

In this case, the District Court apparently adopted the second or "restrictive" approach, which prohibits Casazza from doing an end-run around the statute of frauds because his promissory estoppel claim is based on the very promise that the statute otherwise bars. We might be inclined to agree with Casazza that Minnesota does not endorse such a hard-nosed view. See Berg v. Carlstrom, 347 N.W.2d 809, 812 (Minn. 1984) ("An agreement may be taken out of the statute of frauds . . . by application of the doctrine[] of promissory estoppel . . . "); Del Hayes, 230 N.W.2d at 593 ("[T]he general savings clause of the UCC provides that the principles of estoppel, as well as other common-law principles, will continue to apply unless expressly displaced by provisions of the UCC."); Norwest Bank Minn., N.A. v. Midwestern Mach. Co., 481 N.W.2d 875, 880 (Minn. Ct. App. 1992) ("An agreement may be taken outside the statute of frauds by equitable or promissory estoppel."). Nonetheless, we affirm the District Court's dismissal of Casazza's promissory estoppel claim. Even if we assume Casazza is correct that Minnesota does not endorse the view that promissory estoppel can never overcome the statute of frauds defense in a case such as this, he fails to convince us that his claim could proceed

under either of the remaining approaches discussed by the Minnesota Supreme Court in Del Hayes.

Casazza's promissory estoppel claim fails under the Restatement approach because he did not sufficiently allege that Kiser promised to reduce their oral agreement to writing. Casazza argues he made a sufficient allegation in his amended complaint, where he alleged that Kiser asked him to complete a blank Coast Guard bill of sale. In ruling on Casazza's motion for reconsideration, the District Court rejected this argument and held that "[e]ven a liberal reading of the Complaint . . . does not support the inclusion of such a claim." Order, February 7, 2002, at 2. Based on our own review of the amended complaint, we agree. The bill of sale is mentioned in only one line of Casazza's five-page amended complaint. Nowhere in this complaint does Casazza specifically allege that Kiser promised to reduce their  oral agreement to writing. See Jensen v. Taco John's Int'l, Inc., 110 F.3d 525, 528 (8th Cir. 1997) (affirming summary judgment dismissal of promissory estoppel claim where plaintiff failed to show a "clear and definite promise" made by the defendant regarding alleged franchise agreement) (citing Ruud v. Great Plains Supply, Inc., 526 N.W.2d 369, 372 (Minn. 1995)).

Casazza's promissory estoppel claim also fails under the so-called least restrictive approach. Under this approach, Casazza's promissory estoppel claim can only proceed "where the detrimental reliance is of such a character and magnitude that refusal to enforce the contract would permit one party to perpetrate a fraud." Del Hayes, 230 N.W.2d at 594; see also  Flanagan, 821 F.Supp. at 574; Pako Corp. v. Citytrust, 109 B.R. 368, 382 (D. Minn. 1989) (granting summary judgment against plaintiff's promissory estoppel claim because plaintiff alleged "'no unconscionable conduct' . . . nor anything remotely resembling fraud"). Here, Casazza alleges that he and Kiser reached an agreement on the sale of the *Andante* and that he subsequently arranged for a survey, obtained an estimate for some repairs, visited marinas, and tentatively arranged slip space for the boat. Casazza also alleges that

a week later, Kiser told him he was not going to sell him the boat. Nowhere in Casazza's amended complaint does he allege that Kiser did anything that would constitute a fraud. At most, Casazza alleges that Kiser broke their oral agreement after Casazza had expended some money and time in anticipation of buying the boat.

Casazza's allegations simply do not amount to detrimental reliance of the sort required to take this agreement out of the statute of frauds. See Del Hayes, 230 N.W.2d at 594 n.11 ("The fraud most commonly treated as taking an agreement out of the Statute of Frauds" occurs where "the other party has been induced to make expenditures or a change of situation **, *so that the refusal to complete the execution of the agreement is not merely a denial of rights which it was intended to confer, but the infliction of an unjust and unconscionable injury and loss.*" (quoting 3 Williston, Contracts (3 ed.) § 533A, p. 798) (emphasis added) (alteration in Del Hayes)). Whatever we might think of Kiser's behavior, we find nothing in the pleadings to suggest that judicial refusal to enforce the oral agreement "would permit one party to perpetrate a fraud." Id. "[A] mere refusal to perform an oral agreement unaccompanied by unconscionable conduct . . . is not such a fraud as will justify disregarding the statute." Id.; see also Pako Corp., 109 B.R. at 382. Casazza's promissory estoppel claim therefore must fail.

## III. Conclusion

For the reasons stated, we affirm the order of the District Court dismissing Casazza's suit.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.